# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

VINCENT DiBENEDETTO; ROCCO
SAPIENZA; LOUIS DeFRANCESCA;
PATRICK CONWAY and GAIL DAVIS,

                Plaintiffs,

      v.

ANTHONY JOSEPH POPE; KENNETH
S. POWELL; RONALD L. ROBERTS;
KENNETH S. POWELL INVESTMENTS,
INC., a/k/a KENNETH S. POWELL
INVESTMENTS CORPORATION, a/k/a
KS INVESTMENTS, INC., a/k/a KS
POWELL INVESTMENT
CORPORATION, a Missouri corporation;
KENNETH S. POWELL PROFIT-
SHARING TRUST; R.R. INVESTMENTS,
INC., a Missouri corporation; ISMAEL
COVARRUBIAS, and YORK ROAD,
LLC, a Missouri Limited Liability
Company,

                Defendants.

JUDGE KOCORAS

Case No. 00C 3294

JURY TRIAL DEMANDED

MAGISTRATE JUDGE BOBRICK

DOCKETED
MAY 31 2000

FILED 04
00 MAY 31 PM 2: 25
U.S. DISTRICT COURT

## COMPLAINT

NOW COMES Plaintiffs, VINCENT DiBENEDETTO, ROCCO SAPIENZA, LOUIS

DeFRANCESCA, PATRICK CONWAY and GAIL DAVIS, by and through their attorneys, Foran

& Schultz, and complain against Defendants, Anthony Joseph Pope, Kenneth S. Powell, Ronald L.

Roberts, Kenneth S. Powell Investments, Inc., a/k/a Kenneth S. Powell Investments Corporation,

a/k/a KS Investments, Inc., a/k/a KS Powell Investment Corporation, Kenneth S. Powell Profit

Sharing Trust, R.R. Investments, Inc., Ismael Covarrubias, and York Road LLC, a Missouri limited

liability company, allege as follows:

1.     This suit involves a fraudulent pyramid or "Ponzi" type scheme to obtain monies through the illegal offer and sale of unregistered investment interests by the Powell and Roberts Defendants and Covarrubias.   Defendant Pope solicited numerous investors to purchase the investment interests, using his status as attorney and accountant/investment advisor to induce his clients to invest.  Numerous individuals and entities, including Plaintiffs, were induced to invest millions of dollars in reliance on misrepresentations and omissions made by Defendants.  Plaintiffs seek to recover damages from all Defendants for: violations of Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act") (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated by the Securities and Exchange Commission (17 CFR § 240, 10b-5); violations of Section 12(2) of the Securities Act of 1933 (the "1933 Act") (15 U.S.C. § 77, (2)); common law fraud; and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.). Plaintiffs also seek to recover damages against Defendants other than Pope for breach of contract and unjust enrichment, and seek to recover damages against Defendant Pope for attorney and accountant malpractice (negligence and breach of contract).  Plaintiffs demand trial by jury.

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiffs Vincent DiBenedetto ("DiBenedetto"), Rocco Sapienza ("Sapienza") and Patrick Conway ("Conway") are citizens of the State of Illinois.  Plaintiffs Louis J. DeFrancesca ("DeFrancesca") and Gail Davis ("Davis") are citizens of the State of Florida.

2.     Defendant Anthony Joseph Pope ("Pope") is an Illinois citizen, an attorney and certified public accountant, licensed to practice and practicing law and accounting in Illinois.  For many years prior to the events set forth herein, Pope has acted as attorney and accountant for the

Plaintiffs, DiBenedetto, Sapienza, DeFrancesca and Conway, individually and for various business in which one or more of them have or had an interest. Pope had no relationship with Davis prior to this transaction, but he did provide legal and financial advice in this transaction as set forth hereafter.

3.    On information and belief, Defendant Kenneth S. Powell ("Powell") and Ronald L. Roberts ("Roberts") are citizens of the State if Missouri.

4.    On information and belief, Defendants Kenneth S. Powell Investments, Inc., a/k/a Kenneth S. Powell Investments Corporation, a/k/a KS Investments, Inc., a/k/a K.S. Powell Investment Corporation ("Powell Investments"), and R.R. Investments, Inc., are Missouri corporations.  On information and belief, the Kenneth S. Powell Profit-Sharing trust is a trust organized under the laws of the State of Missouri.  Each of these entities solicited "investments" from and accepted funds from numerous Illinois citizens in connection with the investment scheme that is the subject matter of this Complaint (these entities, along with Powell and Roberts, are sometimes collectively referred to herein as the "Powell and Roberts Defendants").

5.    On information and belief, Defendant Ismael Covarrubias ("Covarrubias") is a citizen of the state of Illinois, a client of Pope's and a principal, with the Powell and Roberts Defendants, in the investment scheme that is the subject of this Complaint.

6.    Defendant York Road, LLC, is a limited liability company organized under the laws of Missouri with its principal place of business in Elmhurst, Illinois.

7.    At all relevant times thereto, the Defendants were associated with an involved in the business affairs of an investment scheme pursuant to which they operated and solicited investments in Illinois from Illinois citizens.

3

8.     This Court has subject matter jurisdiction over this action:

     a.     pursuant to Section 27 of the 1934 Act (15 U.S.C. § 78a); and

     b.     pursuant to the doctrine of pendent jurisdiction.

9.     Venue is proper in the Northern District of Illinois pursuant to Section 1381 of the Untied States Judicial Code (18 U.S. § 1391) in that a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

10.     On or about December 20, 1998, Defendant Pope contacted DiBenedetto by telephone with what Pope referred to as an investment opportunity. Pope represented that the investment involved the purchase and resale of land in the path of the expansion of Lambert-St. Louis International Airport.

11.     In this telephone conversation, Defendant Pope made the following misrepresentations to DiBenedetto:

     a.     That unidentified principals in the purchase/resale transaction (the "transaction") had purchased numerous real estate parcels individually and were about to resell the parcels as a group ("bundle") for a total price of approximately $1 billion;

     b.     That resale of the bundle was to be made to an entity involved in the airport expansion;

     c.     That the resale price for the bundle was vastly in excess of the combined individual purchase prices paid to acquire each parcel;

     d.     That the principals needed a cash infusion to ensure that they could deliver all of the real estate parcels in the bundle free and clear of any encumbrance;

e.   That Pope needed to obtain $250,000.00 as soon as possible and deliver that money to the principals in St. Louis;

f.   That the $250,000.00 investment would yield a 6 to 1 return at the time of closing, which was scheduled to occur within the next thirty (30) days;

g.   That DiBenedetto should make the investment based on his faith in and long-term relationship with Pope; and

h.   That Pope himself had invested substantial amounts of money into the deal.

12.   On December 24, 1998 and January 5, 1999, respectively, DiBenedetto, in reliance on Defendant Pope's misrepresentations as set forth above, delivered to Pope two cashier's checks in the respective amounts of $150,000.00 and $100,000.00. At Pope's direction, both checks were made payable to "RR Investments, Inc., a Missouri corporation, and Ronald K. Roberts." A copy of the $150,000.00 check and the $100,000.00 check are attached hereto as Group Exhibit A.

13.   Defendant Pope took delivery of the $150,000.00 and $100,000.00 checks which were subsequently cashed by Defendants RR Investments, Inc., and Roberts.

14.   On or about January 15, 1999, Defendant Pope contacted Plaintiffs Sapienza and DeFrancesca (each of whom were long time clients and friends of Pope) by telephone, to discuss with them the same investment opportunity he had brought to DiBenedetto's attention a few weeks earlier.

15.   In his telephone conversations with Sapienza and DeFrancesca, Pope made the following misrepresentations:

a.   That principals in the purchase/resale transaction (the "transaction") had purchased numerous real estate parcels individually and were about to resell the parcels as a group ("bundle") for a total price of approximately $1 billion;

5

b.      That resale of the bundle was to be made to an entity involved in the airport expansion;

c.      That the resale price for the bundle was vastly in excess of the combined individual purchase prices paid to acquire each parcel;

d.      That the principals needed a cash infusion to ensure that they could deliver all of the real estate parcels in the bundle free and clear of any encumbrance;

e.      That Pope needed to obtain $750,000.00 by the next day, or as soon as possible, and deliver that money to the principals in St. Louis;

f.      That the $750,000.00 investment would yield a 5 to 1 return at the time of closing, which was scheduled to occur within the next few days, but certainly not more than thirty (30) days;

g.      That Pope would not turn the investment funds over to the principals unless he was sure the transaction was going to close;

h.      That Pope himself had invested between $250,000.00 and $400,000.00 in the transaction; and

i.      That Sapienza and DeFrancesca should make the investment based on their faith in and long-term relationship with Pope; and

16.     In addition, Pope urged Sapienza and DeFrancesca to get others to join in the investment. As a result, Sapienza talked to Plaintiff Conway, his business partner, whose company was a client of Pope's, about the investment. DeFrancesca spoke to his fiancee, Plaintiff Davis, who was socially acquainted with Pope, about the investment. Conway and Davis both spoke to Pope directly, and he urged each of them to put money into the investment.

17.     On January 21, 1999, in reliance on Defendant Pope's misrepresentations, as set forth above, Sapienza delivered to Pope a cashier's check in the amount of $280,000.00. At Pope's direction, the check was made payable to "RR Investments, Inc., a Missouri corporation, and Ronald L. Roberts." A copy of the $280,000.00 check is attached hereto as Exhibit B. The $280,000.00 check included the individual investments made by Sapienza, DeFrancesca, Conway and Davis as follows:

| | |
|---|---|
| Sapienza | $ 85,000.00 |
| DeFrancesca | $130,000.00 |
| Conway | $ 35,000.00 |
| Davis | $ 30,000.00 |
| | |
| Total: | $280,000.00 |

18.     Defendant Pope took delivery of the $280,000.00 check which was subsequently cashed by Defendants RR Investment, Inc., and Roberts.

19.     In his respective telephone conversations with DiBenedetto, Sapienza and DeFrancesca, as set forth above, Defendant Pope also represented that he had "checked out" the investment and could see nothing which would stop the transaction from closing. Pope also represented that Defendant Covarrubias was one of Pope's major clients, that Covarrubias was a principal in the transaction and that it was through Covarrubias that Pope had become involved in the transaction. Pope represented that Defendants Powell and Roberts also were principals in the transaction. Pope represented that he had personally met Defendants Powell and Roberts, and that they were reliable businessmen.

20.     On or about January 24, 1999, Defendant Pope produced to Plaintiffs five "Investment Agreements," reflecting Plaintiffs' investments and promised profits (i.e., at least 6 to 1 on Plaintiffs' investment). The "Investment Agreements" list Defendant Powell Investments as the recipient of Plaintiffs' funds, with Defendants Powell and Roberts as "guarantors." The

7

"Investment Agreements" further promise that Plaintiffs' principal and the promised return (totaling $3,430,000.00) would be paid to Plaintiffs no later than January 30, 1999. Each "Investment Agreement" was signed by Defendants Powell and Roberts and witnessed by Defendant Covarrubias. True and correct copies of the "Investment Agreements" are attached hereto as Group Exhibit C.

21.     Beginning in late January, 1999, and continuing through March, 1999, Plaintiffs DiBenedetto, Sapienza and DeFrancesca each had numerous telephone conversations, and in some instances, personal meetings with defendant Pope, during which they inquired about the status of the transaction. Conway and Davis also spoke to Pope about the investment at least once during this general time frame.

22.     Pope responded to these inquiries by misrepresenting that he was still working on the transaction, that the transaction was moving forward, that he was traveling frequently to St. Louis to attend to and "clean up" various problems which needed to be resolved so that the closing, which he continued to portray as being imminent, could take place. The tone and gist of Pope's misrepresentations throughout this period was to the effect that there were only a few more minor impediments to be removed, and then the transaction would close.

23.     In late March, 1999, Pope misrepresented to Plaintiffs that the final deed had been "cleaned up," that "two old ladies" had to be "taken care of," and that the transaction should close within two weeks. Pope also misrepresented that it had become necessary to repurchase the investment of one investor and that this had caused delays.

24.     Beginning in or about April or May, 1999, Pope misrepresented that the purchasers of the bundled property were contractually obligated to purchase the property, but that they had until December 31, 1999 to close.

8

25.     Pope continued to misrepresent, however, that with the infusion of more cash, the transaction could close momentarily.  In that regard, on or about May 10, 1999, Pope and a person identifying himself as "Mr. Falkenbery," supposedly a representative of the purchasers, had a telephone conversation with DiBenedetto.  In that conversation, which Pope arranged, Pope misrepresented that if the Defendants could gather another $200,000.00 to $250,000.00 to clean up liens and judgments on the bundle property, the transaction could close within twenty four (24) hours.

26.     On May 11, 1999, DiBenedetto, in reliance on Pope's representations, invested another $15,000.00.  Pursuant to Pope's direction, a cashier's check for that amount was made payable to defendant K.S. Powell Investment, Inc., and subsequently cashed by that entity.  A copy of that check is attached hereto as Exhibit D.  In further consideration of the $15,000.00, investment, DiBenedetto received a Promissory Note for $165,000.00 executed by Kenneth S. Powell on behalf of K.S. Powell Investment, Inc., due on May 12, 2000.  A copy of the Promissory Note is attached hereto as part of Exhibit D.  The Promissory Note was personally guaranteed by Powell and Roberts.

27.     On or about May 16, 1999, Pope again contacted DiBenedetto by telephone to discuss the investment.  Pope told DiBenedetto that he had not be successful in raising the $200,000.00 to $250,000.00 needed to close the deal.  Pope stated to DiBenedetto that if DiBenedetto would put up another $180,000.00, the "deal would be done."

28.     In reliance on these representations, DiBenedetto, at Pope's direction, wire transferred $180,000.00 to a bank account in Missouri held in the name of the "K.S. Powell Investment Corp."  A copy of a document evidencing the wire transfer is attached hereto as Exhibit E.  In further

consideration of the $180,000.00 investment, DiBenedetto received a Promissory Note for $3,085,000.00 executed by Kenneth S. Powell on behalf of K.S. Powell Investment, Inc., due on May 12, 2000. A copy of the Promissory Note is attached hereto as part of Exhibit E. The Promissory Note was personally guaranteed by Powell and Roberts

29.     Despite these additional infusions of cash by DiBenedetto, the closing did not take place. Instead, Pope misrepresented to Plaintiffs that "EPA testing was being conducted, and that the closing was delayed as a result." Pope falsely reiterated to Plaintiffs that the transaction had to close by December 31, 1999.

30.     In mid to late June, 1999, Pope informed the Plaintiffs that the Internal Revenue Service and Securities Department of the Illinois Secretary of State's Office were investigating the transaction, had asserted that the investments at issue constituted the sale of unregistered securities, and had concluded that the transaction "was a scam." Pope represented that he still believed that the transaction was "a good deal" because the IRS had previously examined the transaction and had found no problem with it.

31.     On or about June 28, 1999, Pope signed and sent to Plaintiffs a letter stating that the Securities Department of Illinois Secretary of State had obtained a Temporary Order of Prohibition, barring any further solicitation of funds in connection with the transaction. In that letter, Pope also stated that Defendant Powell maintained that the transaction should close shortly. A true and correct copy of the June 28, 1999 letter which Plaintiff Sapienza received is attached hereto as Exhibit F. Sapienza spoke to Pope regarding this letter soon after receiving it. Pope told him that the Illinois Secretary of State's Office had previously reviewed the transaction and had found nothing wrong. Pope assured Sapienza that the transaction would close.

10

32.     In or about July, 1999, at a meeting, defendant Pope provided to Plaintiffs copies of a "Purchase Agreement" among "Steffen, Inc., an Arizona corporation" as purchaser, and Defendants Powell Investments, the Powell Profit Sharing Trust and RR Investments, Inc., as sellers, which purportedly reflects the terms of the transaction. The signature block of the "Purchase Agreement" identifies the purchaser as "Steffen Properties, Inc." (The various iterations of the purported purchaser are referred to hereinafter as "Steffen"). A true and correct copy of the Purchase Agreement is attached hereto as Exhibit G.

33.     The "Notices" provision of the "Purchase Agreement" provides no address for Steffen. The Arizona Corporation Commission has no record of the existence of Steffen, Inc., Staffen, Inc., or Steffen Properties, Inc. It is apparent that the purported purchaser in the transaction does not exist.

34.     Plaintiffs are informed and believe that in or about August, 1999, defendant Pope represented to investors that, in order to address investor concerns, the principals were transferring title to seventy (70) real estate parcels included in the bundle to a Limited Liability Company, York Road, LLC, to be run by Pope from his office on York Road in Elmhurst, Illinois, and that the purported value of those seventy (70) properties was approximately $50 million. In early August, 1999, Pope again approached DiBenedetto about investing additional monies into the transaction. Pope misrepresented that he was going to take title to the property for the benefit of the investors and was going to travel to St. Louis to do so. Pope stated that he needed another $40,000 to culminate the transaction. DiBenedetto, in reliance upon these representations, advanced Pope $20,000.00 as a loan and authorized Pope to initiate a wire transfer of an additional $20,000.00 (for

11

a total of $40,000.00) from DiBenedetto's account to the Mercantile Bank in St. Louis to the credit of an account held in the name of the Defendant, Kenneth S. Powell. Pope repaid the advance to DiBenedetto, but the additional $20,000.00 was never returned to DiBenedetto.

35.    Plaintiffs are informed and believe that defendant Pope subsequently represented to investors that he was proceeding with the York Road LLC plans and that the LLC board of directors would consist of Pope and two other people. Pope provided certain papers to some investors, including a certificate of organization for the LLC and quit-claim deeds by which Powell Investments purportedly quit-claimed certain properties to Pope and Pope purportedly quit-claimed those properties to the LLC.

36.    Plaintiffs are informed and believe that Pope asked various investors, including Plaintiffs, to sign documents by which they agreed to be bound to the terms of the LLC operating agreement.

37.    Plaintiffs have no recollection or record that they signed the LLC membership papers, and have never seen the LLC operating agreement. Plaintiffs have never been informed as to what, if any, function York Road LLC performed to protect their investments.

## COUNT I

### Against All Defendants For Violations of
### Section 10(b) of The 1934 Act and Rule 10b-5

38.    Plaintiffs reallege paragraphs 1 through 37 as though fully restated.

39.    Beginning in December, 1998, Defendants made material misrepresentations and omissions to investors, including Plaintiffs, in furtherance of a scheme to offer and sell unregistered investment interests and later, limited liability company interests.

40.     In furtherance of this scheme and acting on the instructions of and on behalf of all the Defendants, defendant Pope had oral communications with Plaintiffs in which he induced them to make their original investments in the transaction.

41.     In those oral communications with Plaintiffs, defendant Pope made the misrepresentations alleged in paragraphs 11 and 15 above.  Pope's communication to Plaintiffs also omitted material facts including, without limitation, the following:

        a.      Pope failed to disclose that, while the purported properties in the bundle were near the airport in St. Louis, they were not in the area that had been designated for expansion;

        b.      Pope failed to disclose that Steffen, the entity that was purportedly contractually obligated to purchase the bundle in the resale transaction did not exist and would not, in fact, purchase the bundle;

        c.      Pope failed to disclose that the investment interests being sold to Plaintiffs were unregistered securities that were not exempt from registration;

        d.      Pope failed to disclose the true risks associated with investment in the transaction;

        e.      Pope failed to disclose that some or all of the Defendants would divert and were diverting for their personal use substantial sums invested in the transaction; and

        f.      Pope failed to disclose before Plaintiffs invested that the representations made by Defendants in order to induce Plaintiffs to invest were false.

42.     When the Securities Department of the Illinois Secretary of State's Office obtained an order prohibiting the Powell and Roberts Defendants from continuing to sell unregistered

securities in connection with the transaction, Defendants attempted to convince Plaintiffs and other

to invest in the York Road LLC. Defendants Pope, Powell and Roberts made fraudulent

misrepresentations including, without limitation, that:

       a.     The purpose of the LLC was "to protect and secure" monies advanced by Plaintiffs;

       b.     The formation of the LLC was only an exit strategy, a safety net in the event the Transaction does not close; and

       c.     Plaintiff should become members of the LLC in order to share in the collateralized real estate in the event of sale and liquidation of the real estate.

43.     In addition, Pope orally misrepresented to Plaintiffs that the properties purportedly being transferred to the LLC had a value in excess of $50 million.

44.     Pope's communications with Plaintiffs relating to the LLC also omitted material facts including, without limited, the following:

       a.     Pope failed to disclose that the purported properties in the LLC were not in the area designated for expansion of St. Louis' airport;

       b.     Pope failed to disclose that Steffen, the entity that was purportedly contractually obligated to purchase the properties purportedly held by the LLC did not exist and would not, in fact, purchase those properties;

       c.     Pope failed to disclose that the LLC interests offered to Plaintiffs were unregistered securities that were not exempt from registration;

       d.     Pope failed to disclose the true risks associated with an investment in the LLC;

14

     e.     Pope failed to disclose most of the material terms of members hip in the LLC and provided no operating agreement to Plaintiffs to disclose such terms;

     f.     Pope failed to disclose that the true purpose of the formation of the LLC was to enable Defendants to keep their pyramid/Ponzi scheme afloat, deter concerned investors from seeking the return of their monies and avoid the prohibitions of the order obtained by the Illinois Secretary of State's Securities Department; and

     g.     Pope failed to disclose that the representations made by the Defendants in order to induce Plaintiffs to maintain their investment and convert it to interests in York Road, LLC were false and misleading.

45.     The investment interests in the transaction sold to Plaintiffs and the LLC interest into which Plaintiffs have been asked to convert their investments were securities within the meaning of the 1993 Act and 1934 Act.

46.     Defendants each communicated or caused to be communicated, and/or delivered or caused to be delivered to Plaintiffs the oral and written misrepresentations and omissions alleged above.

47.     At the time that Defendants made the material misrepresentations and omissions alleged above, they knew that some or all were false and/or materially omissive or they acted in reckless disregard of their truth and falsity, and they intended that Plaintiffs rely on those misrepresentations and omissions.

48.     Plaintiffs had a right to rely and did rely to their detriment on Defendants' misrepresentations and omissions of material fact. Had Plaintiffs known the true facts, they would not have invested in the transaction, and would not have retained that investment.

49.     As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiffs invested $745,000.00 in the transaction. Plaintiffs have received no repayment of income or principal.

50.     Defendants are liable to Plaintiffs under Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder because they knowingly or recklessly made misrepresentations and omissions upon which Plaintiffs relied to their detriment in making and retaining their investments in the transaction.

51.     As a direct and proximate result of Defendants' misconduct as alleged above, Plaintiffs were injured and suffered damages.

### COUNT II

### Against All Defendants for Violations of
### Section 12(2) of The 1933 Act

52.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

53.     As alleged in detail above, Defendants sold or offered for sale within the meaning of Section 12(2) of the 1933 Act (15 U.S.C. § 77(1)), unregistered investment interests by the use and means of instruments of communication in interstate commerce.

54.     Defendants are liable to Plaintiffs under Section 12(2) because they knowingly or recklessly made misrepresentations and omissions upon which Plaintiffs relied to their detriment.

55.     This action is brought within one year of the date of the discovery of the Defendants' wrongful conduct.

56.     As a direct and proximate result of Defendants' misconduct, Plaintiffs were injured and suffered damages.

## COUNT III

### Against Defendant Pope for Negligence

57.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

58.     For many years prior to the events alleged herein, Pope has acted as the attorney and accountant for DiBenedetto, Sapienza, DeFrancesca, and Conway, individually, and for business with which they were connected.

59.     In connection with the transaction, defendant Pope acted as attorney, accountant and financial advisor for all Plaintiffs, including Davis, giving them investment and legal advice and recommendations in connection with the transaction.

60.     Pope failed to exercise reasonable and ordinary due care in acting as Plaintiffs' attorney, accountant and financial advisor including, without limitation, in the following particulars:

        a.      Pope failed adequately to determine and apprise Plaintiffs of the true risks of the investment in the transaction that he recommended to Plaintiffs;

        b.      Pope failed adequately to investigate, determine and apprise Plaintiffs regarding the bona fides of the other parties to the investment transaction that he recommended to Plaintiffs;

        c.      Pope failed adequately to determine and advise Plaintiffs regarding the inappropriateness of investment in the transaction for investors in Plaintiffs' position;

        d.      Pope failed adequately to investigate and determine and/or apprise Plaintiffs that the transaction was in fact a fraudulent pyramid/Ponzi scheme; and

        e.      Pope failed to act independently, without conflicts of interest and in his clients' best interests, when giving Plaintiffs advice regarding the legal ramifications of the investments and the maintenance of their investments in the transaction.

17

61.     Plaintiffs at all times acted with ordinary and due care.

62.     As a direct and proximate result of the negligent acts and omissions of defendant Pope alleged above, Plaintiffs have been injured and have suffered damages.

## COUNT IV

### Against Defendant Pope for Breach of Contract

63.     Plaintiffs reallege paragraph 1 through 51 as though fulled restated.

64.     As attorney, accountant and financial advisor for Plaintiffs, defendant Pope expressly or impliedly agreed to act with reasonable and ordinary care, with the ordinary skill and diligence of the accounting and legal professions and in conformity with their generally accepted standards.

65.     Defendant Pope breached that agreement with Plaintiffs by failing to exercise reasonable and ordinary care as alleged above.

66.     Plaintiffs performed in whole each and every obligation and condition precedent due from Plaintiffs under the terms of their agreement with defendant Pope.

67.     As a direct and reasonably foreseeable consequence of defendant Pope's breaches of the express and implied covenants in his actions as attorney, accountant and financial advisor for Plaintiffs, as alleged above, Plaintiffs have been injured and have suffered damages.

## COUNT V

### Against all Defendants for Violation of The Illinois
### Consumer Fraud and Deceptive Business Practice Act

68.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

69.     In order to induce Plaintiffs to invest and to maintain their investment in Defendants' pyramid/Ponzi scheme, Defendants used deception, fraud, false pretenses, false promises, misrepresentations and concealments as alleged above, with the intent that Plaintiffs rely on them.

18

70.     This conduct by Defendants was violative of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (The "CFA").

71.     As a direct and proximate result of Defendants' conduct in violation of the CFA, Plaintiffs were injured and suffered damages.

## COUNT VI

### Against All Defendants for Common Law Fraud

72.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

73.     Defendants made to Plaintiffs or caused to be made to Plaintiffs the material misrepresentations and omissions alleged above with knowledge of their falsity or reckless disregard for their truth or falsity and the intent that Plaintiffs rely.

74.     Defendants had a duty to disclose all material information regarding the transaction that they omitted to disclose to Plaintiffs.

75.     Plaintiffs reasonably relied on Defendants' material misrepresentations and omissions by purchasing and retaining their investment interests in the transaction.

76.     As a direct and proximate result of Defendants' fraudulent misrepresentations and omissions, Plaintiffs were injured and suffered damages.

## COUNT VII

### Against Defendants Other Than Pope
### For Civil Conspiracy to Defraud

77.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

78.     Each of the Powell and Roberts Defendants and Covarrubias knowingly and intentionally participated in the fraudulent pyramid/Ponzi scheme to defraud investors including Plaintiffs.

79.     Each of the Powell and Roberts Defendants and Covarrubias manifested their agreement to conspire to obtain investor funds through false pretenses, either by making misrepresentations in furtherance of the conspirators' scheme, omitting to disclose material information in furtherance of the conspirators' scheme, and/or receiving and accepting the fruits of the conspirators' scheme.

80.     As a direct and proximate result of the Powell and Roberts Defendants and Covarrubias' conspiracy to defraud, Plaintiffs were injured and suffered damages.

## COUNT VIII

### Against Defendants Powell Investments, Powell and Roberts for Recovery on the "Investment Agreements" and Promissory Notes

81.     Plaintiffs reallege paragraph 1 through 51 as though fully restated.

82.     In the "Investment Agreements" attached hereto as Group Exhibit C, Defendants Powell Investments, Powell and Roberts promised to pay Plaintiffs the following total principal and returns on their investments on or before January 30, 1999:

| | |
|---|---|
| Vincent DiBenedetto | $1,750,000.00 |
| Rocco Sapienza | $ 510,000.00 |
| Louis DeFrancesca | $ 780,000.00 |
| Patrick Conway | $ 210,000.00 |
| Gail Davis | $ 180,000.00 |
| Total: | $3,430,000.00 |

83.     Each of the "Investment Agreements" contains an irrevocable confession of judgment provision that provides that the particular Plaintiff is entitled to an immediate judgment on "this note" for an overdue and unpaid amount, together with reasonable costs and attorneys' fees. In the Promissory Notes, which are included as part of Exhibits D and E, Defendants Powell Investments, Powell and Roberts promised to pay DiBenedetto $3,250,000.00 on or before May 12 and May 17, 2000, respectively.

20

84.     Defendants have not made any payment to any of the Plaintiffs as required under the terms of the "Investment Agreements" or to DiBenedetto under the Promissory Notes, and all the payments at issue are therefore in default.

## COUNT IX

### Against The Powell and Roberts Defendants for
### Unjust Enrichment and Imposition of a Constructive Trust

85.     Plaintiffs reallege paragraphs 1 through 51 as though fully restated.

86.     By obtaining Plaintiffs' funds for their own use through material misrepresentations and omissions, as alleged above, the Powell and Roberts Defendants were unjustly enriched.

87.     This Court should impose a constructive trust on the improperly obtained assets of Plaintiffs that the Powell and Roberts Defendants received and should order them to turn over to Plaintiffs all such assets.

**WHEREFORE**, Plaintiffs VINCENT DiBENEDETTO, ROCCO SAPIENZA, LOUIS DeFRANCESCA, PATRICK CONWAY and GAIL DAVIS, request entry of judgment in their favor and against Defendants Anthony Joseph Pope, Kenneth S. Powell, Ronald L. Roberts, Kenneth S. Powell Investments, Inc., a/k/a Kenneth S. Powell Investments Corporation, a/k/a KS Investments, Inc., a/k/a KS Powell Investment Corporation, Kenneth S. Powell Profit Sharing Trust, R.R. Investments, Inc., and Ismael Covarrubias, jointly and severally:

A.     Awarding Plaintiffs compensatory damages in an amount sufficient to make each of them whole;

B.     Awarding Plaintiffs their contractually promised investment returns;

C.     Awarding Plaintiffs punitive damages in an amount sufficient to punish Defendants for their wilful and wanton misconduct and to deter such conduct in the future, as provided under the Illinois Consumer Fraud and Deceptive Business Practices Act;

D.  Imposing a constructive trust on all assets obtained by Defendants from Plaintiffs and ordering Defendants to return those assets to Plaintiffs;

E.  Awarding Plaintiffs their costs of suit and reasonable attorneys' fees as provided under the "Investment Agreements" and the Illinois Consumer Fraud and Deceptive Business Practices Act; and

F.  Awarding Plaintiffs such additional relief as the Court deems proper.

VINCENT DiBENEDETTO; ROCCO SAPIENZA; LOUIS DeFRANCESCA; PATRICK CONWAY and GAIL DAVIS

By: _____
One of their Attorneys

Jack J. Carriglio
Stephen A. Gorman
Foran & Schultz
30 North LaSalle Street
Suite 3000
Chicago, Illinois 60602
312/368-8330

F:\CLIENTS\10216-2\PLEADING\DIBENN~1

22

# EXHIBIT A



## The Northern Trust Company
### Chicago, Illinois

OB 19163

2-18/710

Remitter: DDS, LLC

12/24/98

PAY TO THE ORDER OF  RR Investments Inc.,a Missouri
Corporation & Ronald L.Roberts

$**150,000.00

***One Hundred Fifty Thousand and 00/100

_Parish J. Dueno_

AUTHORIZED SIGNATURE

## Cashier's Check

⑈019163⑈ ⑆071000152⑆:3013254⑈

# The Northern Trust Company
## CUSTOMER'S RECORD COPY
### THIS IS YOUR RECEIPT
KEEP IT AS A RECORD OF YOUR PAYMENT

OB 19123

2-18/710

Remitter: SGS, LLC

01/05/99

TO SK INVESTMENTS INC.,A MISSOURI
CORPORATION & RONALD L.ROBERTS

***100,000.00

***One Hundred Thousand and 00/100

**Cashier's Check**
RECEIPT

NOT NEGOTIABLE

## CUSTOMER'S RECORD COPY
### THIS IS YOUR RECEIPT
KEEP IT AS A RECORD OF YOUR PAYMENT

MEMO_____

# EXHIBIT B

**Cashier's Check**



**LIBERTYVILLE BANK & TRUST** COMPANY

507 NORTH MILWA      AVENUE
LIBERTYVILLE, ILL    60048
847-367-6800

6812

70-2556
—————
719

Remitter ROCCO SAPIENZA

Date January 21, 1999

Pay to the RR INVESTMENTS, INC. A MISSOURI
Order of CORP. AND RONALD L ROBERTS

$***280,000.00

**Two Hundred Eighty Thousand and Zero Cents** 280,000.00

Brian B. Mikaelian S.V.P.

⑈006812⑈ ⑆071925567⑈ ⑈085000001 7⑈ ⑈0028000000⑈

31 1687    294 02/09/99
   1904362 18  SORT 038
081000219  MERC 071000770

1747719490

1000299980 0000029998 990208
>>081000728<< ALLEGIANT ST LOUIS

FB '99 10
**PAID**
BY DRAWEE INSTITUTION

AHN: Tony Pope

# EXHIBIT C

## Investment Agreement

Amount $ 1,750,000.00                                    January 24, 1999

For value received, of an initial investment of $250,000 Kenneth Powell Investments Incorporated of St. Louis, Missouri, with Kenneth S. Powell and Ronald L. Roberts as guarantors, hereby promise to pay Vincent DiRenedetto the total principal return sum of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00), in one installment on or before January 30, 1999 or the date of funding whichever comes first, with Kenneth Powell Investments when this note shall become due. Monies owed to Vincent DiRenedetto will be made part of said sale and funded directly from escrow. The said monies cannot be held no later than January 30, 1999 in said escrow account and is hereby guaranteed that once said investment is made, Kenneth S. Powell Investments will finalize and close said transaction in St. Louis with our buyers. We will in turn close, fund and disburse to said investor the guaranteed return listed above in one lump sum within the time period as agreed above.

The maker hereof reserves the privilege of prepaying, without penalty, at any time and from time to time, any part or all of the within indebtedness. Any and all prepayments shall be applied first to accrued and unpaid interest and the remainder to principal on the last monthly installment.

The undersigned hereby authorizes, irrevocably, any attorney of any court of record to appear for the undersigned in such court, in term or vacation, at any time after default in the payment of any installment due herein, and confess judgment without process in favor of the payee or holder of this note for such amount as may appear to be paid hereon, together with reasonable costs of collection including reasonable attorney's fees, and waives and releases all errors which may intervene in any such proceedings, and consents to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

Kenneth S. Powell Investments, Inc. hereby waives presentment of payment, notice of dishonor, protest and notice of protest.

_____                    _____
Vincent DiRenedetto-Private Investor          Kenneth S. Powell Investments, Inc.
                                              Kenneth S. Powell President

_____                    _____
Ishmael Covarrubias-Witness                   Ronald L. Roberts

## Investment Agreement

Amount $ 510,000.00                                      January 24, 1999

For *value received, of an initial investment of $85,000 Kenneth Powell Investments Incorporated of St. Louis, Missouri, with Kenneth S. Powell and Ronald L. Roberts as guarantors, hereby promise to pay* Rocco A. Sapienza *the total principal return sum of* Five Hundred Ten Thousand Dollars ($510,000.00), *in one installment on or before January 30, 1999 or the date of funding whichever comes first, with Kenneth Powell Investments when this note shall become due. Monies owed to* Rocco A. Sapienza *are to be made part of said sale and funded directly from escrow. The said monies cannot be held no later than January 30, 1999 in said escrow account and is hereby guaranteed that once said investment is made, Kenneth S. Powell Investments will finalize and close said transaction in St. Louis with our buyers. We will in turn close, fund and disburse to said investor the guaranteed return listed above in one lump sum within the time period as agreed above.*

*The maker hereof reserves the privilege of prepaying, without penalty, at any time and from time to time, any part or all of the within indebtedness. Any and all prepayments shall be applied first to accrued and unpaid interest and the remainder to principal on the last monthly installment.*

*The undersigned hereby authorizes, irrevocably, any attorney of any court of record to appear for the undersigned in such court, in term or vacation, at any time after default in the payment of any installment due herein and confess judgment without process in favor of the payee or holder of this note for such amount as may appear to be paid hereon, together with reasonable costs of collection including reasonable attorney's fees, and waives and releases all errors which may intervene in any such proceedings, and consents to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.*

*Kenneth S. Powell Investments, Inc. hereby waives presentment of payment, notice of dishonor, protest and notice of protest.*

Rocco A. Sapienza-Private Investor

Kenneth S. Powell Investments, Inc.
Kenneth S. Powell-President

Ismael Covarrubias-Witness

Ronald L. Roberts

## Investment Agreement

Amount $ 780,000.00                                      January 24,1999

For value received, of an initial investment of **$130,000** Kenneth Powell Investments Incorporated of St. Louis, Missouri, with Kenneth S. Powell and Ronald L. Roberts as guarantors, hereby promise to pay **Louis J. DeFrancesca** the total principal return sum of **Seven Hundred EightyThousand Dollars ($780,000.00)**, in one installment on or before January 30,1999 or the date of funding whichever comes first, with Kenneth Powell Investments when this note shall become due. Monies owed to **Louis J. DeFrancesca** are to be made part of said sale and funded directly from escrow. The said monies cannot be held no later than January 30,1999 in said escrow account and is hereby guaranteed that once said investment is made, Kenneth S. Powell Investments will finalize and close said transaction in St. Louis, with our buyers. We will in turn close, fund and disburse to said investor the guaranteed return listed above in one lump sum within the time period as agreed above.

The maker hereof reserves the privilege of prepaying, without penalty, at any time and from time to time, any part or all of the within indebtedness. Any and all prepayments shall be applied first to accrued and unpaid interest and the remainder to principal on the last monthly installment.

The undersigned hereby authorizes, irrevocably, any attorney of any court of record to appear for the undersigned in such court, in term or vacation, at any time after default in the payment of any installment due herein, and confess judgment without process in favor of the payee or holder of this note for such amount as may appear to be paid hereon, together with reasonable costs of collection including reasonable attorney's fees, and waives and releases all errors which may intervene in any such proceedings, and consents to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

Kenneth S. Powell Investments, Inc. hereby waives presentment of payment, notice of dishonor, protest and notice of protest.

_Louis J. DeFrancesca-Private Investor_          **Kenneth S.Powell Investments, Inc.**
                                                 **Kenneth S. Powell-President**

_Ismael Covarrubias-Witness_                     _Ronald L. Roberts_

Investment Agreement

Amount $ 210,000.00                                    January 24, 1999

*For value received, of an initial investment of $35,000 Kenneth Powell Investments Incorporated of St. Louis, Missouri, with Kenneth S. Powell and Ronald L. Roberts as guarantors, hereby promise to pay <u>Patrick J. Conway</u> the total principal return sum of Two Hundred Ten Thousand Dollars ($210,000.00), in one installment on or before January 30, 1999 or the date of funding whichever comes first, with Kenneth Powell Investments when this note shall become due. Monies owed to <u>Patrick J. Conway</u> are to be made part of said sale and funded directly from escrow. The said monies cannot be held no later than <u>January 30, 1999</u> in said escrow account and is hereby guaranteed that once said investment is made, Kenneth S. Powell Investments will finalize and close said transaction in St. Louis, with our buyers. We will in turn close, fund and disburse to said investor the guaranteed return listed above in one lump sum within the time period as agreed above.*

*The maker hereof reserves the privilege of prepaying, without penalty, at any time and from time to time, any part or all of the within indebtedness. Any and all prepayments shall be applied first to accrued and unpaid interest and the remainder to principal on the last monthly installment.*

*The undersigned hereby authorizes, irrevocably, any attorney of any court of record to appear for the undersigned in such court, in term or vacation, at any time after default in the payment of any installment due herein, and confess judgment without process in favor of the payee or holder of this note for such amount as may appear to be paid hereon, together with reasonable costs of collection including reasonable attorney's fees, and waives and releases all errors which may intervene in any such proceedings, and consents to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.*

*Kenneth S. Powell Investments, Inc. hereby waives presentment of payment, notice of dishonor, protest and notice of protest.*

_____                   _____
Patrick J. Conway-Private Investor                  Kenneth S. Powell Investments, Inc.
                                                     Kenneth S. Powell-President

_____                   _____
Ismael Covarrubias-Witness                          Ronald L. Roberts

## Investment Agreement

Amount $ 180,000.00                                January 24, 1999

For value received, of an initial investment of $30,000 Kenneth Powell Investments Incorporated of St. Louis, Missouri, with Kenneth S. Powell and Ronald L. Roberts as guarantors, hereby promise to pay _Gail Davis_ the total principal return sum of **One Hundred Eighty Thousand Dollars ($180,000.00)**, in one installment on or before **January 30,1999** or the date of funding whichever comes first, with Kenneth Powell Investments when this note shall become due. Monies owed to _Gail Davis_ will he made part of said sale and funded directly from escrow. The said monies cannot be held no later than **January 30,1999** in said escrow account and is hereby guaranteed that once said investment is made, Kenneth S. Powell Investments will finalize and close said transaction in St. Louis .with our buyers. We will in turn close, fund and disburse to said investor the guaranteed return listed above in one lump sum within the time period as agreed above.

The maker hereof reserves the privilege of prepaying, without penalty, at any time and from time to time, any part or all of the within indebtedness. Any and all prepayments shall be applied first to accrued and unpaid interest and the remainder to principal on the last monthly installment.

The undersigned hereby authorizes, irrevocably, any attorney of any court of record to appear for the undersigned in such court, in term or vacation, at any time after default in the payment of any installment due herein, and confess judgment without process in favor of the payee or holder of this note for such amount as may appear to be paid hereon, together with reasonable costs of collection including reasonable attorney's fees, and waives and releases all errors which may intervene in any such proceedings, and consents to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

Kenneth S. Powell Investments. Inc. hereby waives presentment of payment, notice of dishonor, protest and notice of protest.

_____          _____
Gail Davis-Private Investor              Kenneth S.Powell Investments, Inc.
                                         Kenneth S. Powell-President

_____          _____
Ismael Covarrubias-Witness               Ronald L. Roberts

EXHIBIT D

### The Northern Trust Company
#### Chicago, Illinois

**OH   36312**

2-13/710

Remitter: VINCENT DIBENEDETTO

05/11/99

PAY TO THE ORDER OF  K. S. POWELL INVESTMENTS, INC.

$****15,000.00

***Fifteen Thousand and 00/100

_____
AUTHORIZED SIGNATURE

## Cashier's Check

⑈036312⑈ ⑆071000152⑆ 0030132522⑈

## PROMISSORY NOTE

Due:  _5-12-2000_

　　　FOR VALUE RECEIVED of $15,000.00 the undersigned promise to pay to the order of Vincent DiBenedetto, 3004 Manor Drive, Northbrook, Illinois the total sum, including interest, of $165,000.00.

　　　This Note may be prepaid at any time without penalty and is due within twelve months after execution.

　　　The undersigned hereby waives presentment for payment, notice of dishonor, protest and notice of protest. Also, the undersigned agrees to indemnify Vincent DiBenedetto for any and all costs and expenses incurred, including reasonable legal fees, in connection with the collection of this Note. This Note is not negotiable.

K. S. POWELL INVESTMENT, INC.
a Missouri corporation

By: _____
　　　Kenneth S. Powell, President

_____
Kenneth S. Powell
Personal guarantee

_____
Ronald L. Roberts
Personal guarantee

Dated:  _5-13-99_

# EXHIBIT E

Sent By: ANTHONY JOSEPH POPE, LTD.;          630 834 9089;          Sep-2' 99  9:22;          Page 10/10



# The Northern Trust Company
### 50 South LaSalle Street, Chicago, Illinois 60675

DISCOUNT DEVELOPMENT SERVICES LLC
C/O ANTHONY POPE
185 N YORK RD
ELMHURST IL 60126-2790

## STATEMENT OF WIRE ACTIVITY

ACCOUNT NO  0005969808

DATE: MAY 18, 1999

PAGE:    1

Inquiries regarding this statement may be
phoned to: Electronic Banking (312) 444-3695

| Transaction Description | Debit | Credit |
|---|---|---|
| FWO TRN 990518-028038 | | $180,000.00 |
|   TO: ROYAL BKS UCITY MO ROYAL BANKS OF MISSOU  ABA/081001459 | | |
| BNFACCT: 0048194781 | | |
| BNF: K S POWELL INVESTMENT CORP. | | |

```
          SUMMARY
          -------

                    NUMBER          AMOUNT
                    ------          ------
          DEBITS       1        $180,000.00
          CREDITS      0              $.00
          ------
          TOTAL        1
```

ABBREVIATION:   FWO - Fed Wire Out   IBT - Internal Bank Transfer   FWI - Fed Wire In

## PROMISSORY NOTE

Due: May 17, 2000

FOR VALUE RECEIVED of $180,000.00 the undersigned promise to pay to the order of Vincent DiBenedetto, 2897 Techny Road, Northbrook, Illinois, the total sum, including interest, of $3,085,000.00.

This Note may be prepaid at any time without penalty and is due within twelve months after execution.

The undersigned hereby waives presentment for payment, notice of dishonor, protest and notice of protest. Also, the undersigned agree to indemnify Vincent DiBenedetto for any and all costs and expenses incurred, including reasonable legal fees, in connection with the collection of this Note. This Note is not negotiable.

K. S. POWELL INVESTMENT, INC.
a Missouri corporation

By: _____
    Kenneth S. Powell, President


_____      _____
Kenneth S. Powell                 Ronald L. Roberts
Personal guarantee              Personal guarantee


Dated: May 18, 1999

# EXHIBIT F

# ANTHONY JOSEPH POPE, LTD.

## ATTORNEYS AT LAW

185 NORTH YORK ROAD • ELMHURST, ILLINOIS 60126-2790

Telephone: 630-834-9500          Facsimile: 630-834-9089

June 28, 1999

Mr. Rocco A. Sapienza
1713 Delogier Drive
Glenview, Illinois 60025

RE: <u>St. Louis Real Estate Transaction</u>

Dear Rocco:

I have learned that the Securities Department of the Illinois Secretary of State has issued a Temporary Order of Prohibition with respect to the above referenced transaction. In part, this Order bars the further solicitation of funds and challenges the validity of the transaction. In addition, certain questions have been asked of me by the Illinois Secretary of State and other officials in regard to this transaction.

In my last contact with Dr. Powell, I was told that the transaction should close shortly. I am independently attempting to verify this. I have sought counsel, specializing in this field, with respect to inquiries made of me. Please contact me with any questions you may have.

Very truly yours,

Anthony Pope

AP/ch

EXHIBIT G

## Purchase Agreement

This PURCHASE AGREEMENT (the "Agreement") is made to be effective JUNE 16, 1998, (the "Effective Date") among STEFFEN INC., an Arizona corporation (Purchaser) and K.S. Powell, a Missouri corporation, Kenneth S. Powell Investments, Inc. A Missouri dissolved corporation, Kenneth S. Powell, Statutory Trustee, Kenneth S. Powell Profit Sharing Trust, Kenneth S. Powell Trustee, RR Investments Inc. A Missouri corporation in good standing. The Sellers are collectively referred to in this Agreement as the "Selling Parties."

### RECITALS:

WHEREAS, the Purchaser desires to purchase from Selling Parties and Selling Parties desires to sell to Purchaser, on the terms and subject to the conditions of this Agreement, substantially all of the assets, properties and business of Selling Parties.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained in this Agreement, the parties agree as follows:

### ARTICLE 1. TRANSFER OF ASSETS

Subject to the terms and conditions set forth in this Agreement, Selling Parties agrees to sell, convey, transfer, assign and deliver to Purchaser, and Purchaser agrees to purchase from Selling Parties at the Closing described in Article 3 hereof, all the assets, properties and business of Selling Parties of every kind, character and description, whether tangible, intangible, real, personal or mixed, and wherever located (but excluding any assets specifically excluded in the following Sections of this Article 1), free and clear of all security interest, liens, encumbrances, adverse claims and equities of every kind, all of which are sometimes collectively referred to in this Agreement as the "assets," including, but without limitation to the following:

1.1    Owned Real Property.    Those certain parcels of land more fully described in SCHEDULE 1.1 together with all privileges and appurtenances thereto and all buildings, structures, installation, fixtures, betterments, additions, improvements situated thereon and together with all easements used or useful in connection therewith (such land, improvements and easements together hereinafter collectively referred to as the "Owned Real property");

1.2    Real property leases.    All right, title and interest of Selling Parties in the leases of the real property more fully described on SCHEDULE 1.2, together with all rights and privileges under such leases (hereinafter referred to as the "Real Property

**1.3 Books and Records.** All papers, computerized databases and records in Selling Parties' care, custody or control relating to any or all of the above described Assets and the operation of Selling Parties properties, including but not limited to all blueprints and evaluations records, environmental control records, maintenance and production records, plats and surveys of the Real Property, and plans and designs of buildings, structures, fixtures and equipment, to the extent available;

**1.4 Prepaid Expenses.** All prepaid expenses and other prepaid items relating to any of the Assets and the operation of Selling Parties' properties;

**1.5 Permits, etc.** All permits, licenses, franchises, consents or authorizations issued by, and all registrations and filings with, any governmental agency in connection with Selling Parties' properties, whenever issued or filed, excepting only those which by law or by their terms are non-transferable or those which have expired; and

**1.6 All Property Not Elsewhere Described.** All other properties of Selling Parties of every kind, character or description owned, used or held for use (whether or not exclusively) in connection with Selling Parties' properties, wherever located and whether or not similar to the things set forth elsewhere in this Article 1, but excluding any assets specifically excluded in this Article 1.

## ARTICLE 2. PURCHASE PRICE

**2.1 Payment of Purchase Price.** In consideration for the transfer and assignment by Selling Parties of the real properties and in consideration of the representations, warranties and covenants of the Selling Parties set forth herein, Purchaser on the conditions set forth herein,

(a) Has paid to Selling Parties in conjunction with this Agreement as and for the exclusionary right to bargain for the purchase of said properties the amount of $10,000.00 which will not be applied to the Purchase Price (as hereinafter defined) if the transactions contemplated by this Agreement are consummated;

2

(b)     The purchase price is NINE HUNDRED AND TWENTY MILLION DOLLARS ($920,000,000,000.00) IN CASH TO BE PAID AT CLOSING.

(c)     An escrow account sufficient to pay all debts incurred by the Selling Parties shall be established, maintained and controlled by the title company the Selling Parties, and deposited into the escrow account for payment of any debts that may be outstanding that are required to be paid which will allow the closing to be completed.

## ARTICLE 3.  THE CLOSING

The closing of the purchase and sale of the Properties by Selling Parties to Purchaser (the "Closing") shall take place at the offices of title company selected by Purchaser in Saint Louis, Missouri at 10:00 a.m. (local time), on November 14, 1998, or at such other place and/or time as the parties may agree in writing (the "Closing Date").  In the event that the conditions specified in this Agreement have not been fulfilled by such date, Purchaser may extend the Closing Date for a period or periods not exceeding an aggregate of 60 days by written notice to the Selling Parties.  If on the original or any postponed Closing Date the Selling Parties shall have been unable to obtain all waivers an consents of private parties and governmental agencies required by this Agreement, then Purchaser, on written notice, may postpone the Closing to a time not later than 10:00 a.m. local time, on January 14th, 1999.

3.1     Selling Parties' Obligations at the Closing.

(a)     At the Closing, the Selling Parties shall deliver or cause to be delivered to Purchaser:

(i)     For all the owned Real Property and interests in the owned Real

the leases being assigned;

(iii)    Assignment and assumption agreements for personal property leases, all contracts and agreements of Selling Parties to be assumed in connection herewith, in form and substance satisfactory to Purchaser's counsel, and accompanied by all consents required by this Agreement and the personal property leases, contracts and agreements being assigned; and

(iv)    Instruments of assignment and transfer (including a bill of sale) of all of the other Assets of Selling Parties to be transferred hereunder, in form and substance satisfactory to Buyer's counsel, if required.

(b)    Simultaneously with the consummation of the transfer, Selling Parties, through its officers, agents, and employees, shall put Purchaser into full possession and enjoyment of all the assets to be sold, conveyed, transferred, assigned and delivered by this Agreement

(c)    The Selling Parties, at any time before or after the Closing Date, shall execute, acknowledge, and deliver any further deeds , assignments, conveyances and other assurances, documents and instruments of transfer, reasonably requested by Purchaser and shall take any other action consistent with the terms of this Agreement that may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and confirming Purchaser, or reducing to possession, any or all property and assets to be conveyed and transferred by this Agreement. If requested by Purchaser, the Selling Parties further agree to prosecute or otherwise enforce in their own names for the benefit of Purchaser any claims, rights benefits that are transferred to Purchaser by this Agreement and that require prosecution or enforcement in either of the Selling Parties' name.    Any prosecution or enforcement of claims, rights, or benefits under this Section shall be solely at Buyer's expense, unless the prosecution or enforcement is made necessary by a breach of this Agreement by the Selling Parties.

## ARTICLE 4. ASSUMPTION OF LIABILITIES

Purchaser is not assuming any debt, liability or obligation of Selling Parties, whether known or unknown, fixed or contingent, except as herein specifically otherwise provided. The Selling Parties agree to indemnify and hold Purchaser harmless against all debts, claims, liabilities and obligations of Selling Parties not expressly assumed by Purchaser hereunder, and to pay any and all reasonable attorneys' fees and legal costs incurred by Purchaser, its successors and assigns in connection therewith. Purchaser shall have the benefit of and shall perform and assume all leases, contracts and agreements, if any, specifically listed on SCHEDULE 4, in accordance with the terms and conditions thereof except to the extent modifications are specifically set forth on such SCHEDULE 4 and except to the extent set forth in the assignments or assignment and assumption agreements for such leases, contracts and agreements.

## ARTICLE 5. EXCISE AND PROPERTY TAXES

Selling Parties shall pay all sales, use and transfer taxes arising out of the transfer of the Assets notwithstanding any statement herein Purchaser shall pay and recording fees and/or expenses and shall pay its portion, prorated as of the Closing Date, of state and local real property taxes of the properties being sold hereunder. Purchaser shall not be responsible for any business, occupation, withholding or similar tax, or for any income, sales, use, value-added or similar taxes related to any period, or transaction occurring during any period, before the Closing Date.

## ARTICLE 6. REPRESENTATIONS AND WARRANTIES OF SELLING PARTIES.

The Selling Parties, jointly and severally, hereby represent and warrant to Purchaser that the following facts and circumstances are and, except as contemplated hereby, at all times up to the Closing Date will be true and correct, and hereby acknowledge that such facts and circumstances constitute the basis upon which Purchaser is induced to

qualified to transact intrastate business, and is in good standing in all jurisdictions in which the nature of its business or of its properties makes such qualification necessary. Selling Parties represent that no certificate of the selling parties has been revoked, suspended, limited or modified nor, to the knowledge of any of the Selling Parties, is any such certificate of authority the subject of, a proceeding for revocation, restriction, suspension, limitation or modification, nor are the Selling Parties operating under any federal or informal agreement or understanding with the licensing authority of any state which restricts its authority to do business or requires it to take, or refrain from taking any action. Except that Kenneth S. Powell Investments, Inc. is an administratively dissolved corporation in the state of Missouri that Kenneth S. Powell, as Statutory Trustee has the authority wind up its business and to sell the corporate assets.

6.2     <u>Absence of Certain Changes or Events</u>. Since the Last physical inspection there has not been any:

(a)     adverse change in the physical condition, liabilities, assets, business, operating results or prospects of Selling Parties;

(b)     destruction, damage to, or loss of any assets of Selling Parties (whether or not covered by insurance) that adversely affects the value or physical condition of the properties of the Selling Parties;

(c)     sale or transfer of any asset of Selling Parties, except in the ordinary course of business;

(d)     other event or condition of any character that has or might reasonably have an adverse effect on the physical condition of the properties of the Selling Parties; or

(e) Agreement by Selling Parties to do any of the things described in the preceding clauses (a) through (l).

or prior to the Closing will have been, duly authorized by all necessary corporate action of Purchaser. This Agreement constitutes a legal, valid and binding obligation of Selling Parties enforceable in accordance with its terms, except as limited by bankruptcy and insolvency laws and by other laws affecting the rights of creditors generally.

## ARTICLE 8. SELLING PARTIES' OBLIGATIONS BEFORE CLOSING

The Selling Parties covenant that, except as otherwise agreed in writing by Purchaser, from the date of this Agreement until the Closing:

8.1   Purchaser's Access to Premises and Information.   Purchaser and its counsel, accountants and other representatives shall be entitled to have full access during normal business hours to all Selling Parties' properties, books, accounts, records, contracts and documents of or relating to the Assets. The Selling Parties shall furnish or cause to be furnished to Purchaser and its representatives all data and information concerning the properties of Selling Parties that may reasonably be requested.

8.2   Conduct of Business in Normal Course. Selling Parties shall carry on its business and activities diligently and in substantially the same manner as they previously have been carried on, and shall not make or institute any unusual or novel methods of purchase, sale, lease, management of the properties that will vary materially from the methods used by Selling Parties as of the date of this Agreement.

8.3   Maintenance of Insurance. Selling Parties shall continue to carry its existing insurance, subject to variations in amounts required by the ordinary operations of its properties. At the request of Purchaser and at Purchaser's sole expense, the amount of insurance against fire and other casualties which, at the date of this Agreement, Selling Parties carries on any of the properties in respect of its may be increased by such amount or amounts as Purchaser shall specify at the Purchaser's sole expense.

form and substance satisfactory to Purchaser and will furnish to Purchaser executed copies of those consents.

8.5    Representations and Warranties True at Closing.    The Selling Parties shall use their best efforts to assure that all representations and warranties of the Selling Parties set forth in this Agreement and in any written statements delivered to Purchaser by the Selling Parties under this Agreement will also be true and correct as of the Closing Date as if made on that date and that all conditions precedent to Closing shall have been met. Selling Parties shall promptly disclose to Purchaser any information contained in the Schedules to this Agreement which, because of an event occurring after the date hereof, is incomplete or is no longer correct as of all times after the date hereof until the Closing Date; provided, however, that not of such disclosure shall be deemed to modify, amend or supplement the representations and warranties of Selling Parties or the schedules hereto for the purposes of Article 11 hereof, unless Purchaser shall have consented thereto in writing.

8.6    Real Estate taxes.  Selling Parties agrees to furnish to Purchaser a clearance certificate from the appropriate governmental agency and any related certificates that Purchaser may reasonably request as evidence that all real estate taxes liabilities of Selling Parties (other related  liabilities) accruing before the Closing Date have been fully satisfied or provided for.

8.7.    Statutory Filings.  Selling Parties shall cooperate fully with Purchaser in preparing and filing all information and documents deemed necessary or desirable by Purchaser under any statutes or governmental rules or regulations pertaining to the transactions contemplated by this Agreement.

8.8    Exclusive Dealing.  Other than in connection with the transactions contemplated by this Agreement, none of the Selling Parties or any of the financial advisors, attorneys, accountants or any other representatives of the Selling Parties has (a) entered into any agreement, written or oral, involving the liquidation, dissolution, consolidation or acquisition of all or any material portion of the assets of, or any equity

## ARTICLE 9. PURCHASER'S OBLIGATIONS BEFORE CLOSING

Prior to the Closing Date (or, in the event the Closing does not occur, for a period of two years following the date of this Agreement) Purchaser shall use its best efforts to preserve the confidentiality of any commercial information which is confidential and which Selling Parties identifies in writing as confidential which is disclosed to Purchaser or to its representatives by Selling Parties; provided that Purchaser at all times shall not be materially restricted in its investigation of the Assets or matters relating thereto. The above provisions of this Section shall not apply to any information which (i) is already known to Purchaser at the time disclosure by Selling Parties, (ii) is published or through no fault of Purchaser becomes published or (iii) is lawfully disclosed to Purchaser by a third party, whether or not the Closing shall take place, the Selling Parties waive any cause of action, right or claim arising out of the access of Purchaser or its representatives to any trade secrets or other confidential business information of Selling Parties from the date of this Agreement until the Closing Date, except for the intentional competitive misuse by Purchaser or its representatives of such trade secrets or other confidential business information (identified as confidential as required by this Article) if the Closing does not take place.

## ARTICLE 10.   CONDITIONS   PRECEDENT   TO   PURCHASER'S PERFORMANCE

The obligations of Purchaser to purchase the Assets under this Agreement are subject to the satisfaction, at or before the Closing, of all the conditions set out below in this Article 11. Purchaser may waive any or all of these conditions in accordance with Section 16.2 hereof, provided, however, that no such waiver of a condition shall constitute a waiver by Purchaser of any of its other rights or remedies, at law or in equity, if the Selling Parties shall be in default of any of their representations, warranties or covenants under this Agreement.

10.1   <u>Accuracy's of the Selling Parties' Representations and Warranties</u>. All representations and warranties by the Selling Parties in this Agreement or in any written statement that shall be delivered to Purchaser by the Selling Parties under this Agreement shall be true on and as of the Closing Date as though made at that time.

10.3  Selling Parties' Performance.   The Selling Parties shall have performed, satisfied and complied with all covenants, agreements, and conditions required by this Agreement to be performed or complied with by the Selling Parties on or before the Closing Date.

10.4  Certification by Seller.   Purchaser shall have received a certificate, dated the Closing Date, signed by Selling Parties' Chairman, CEO or President, and Chief Financial Officer in such detail as Purchaser and its counsel may reasonably request, that the conditions specified in Section 10.2 and 10.4 have been fulfilled.

10.5  Opinion of the Selling Parties' Counsel. Purchaser shall have received from legal counsel for the Selling Parties, an opinion dated the Closing Date, in form and substance satisfactory to Purchaser and its counsel, that:

(a)  All corporate Selling Parties duly organized, validly existing and in good standing under the laws of Missouri and have all necessary corporate power to own its properties as now owned and operate its business as now operated;

(b)  All corporate proceedings required by law or by the provisions of this Agreement to be taken by Selling Parties on or before the Closing Date in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement, have been duly and validly taken;

(c)  This Agreement has been duly and validly authorized and, when executed and delivered by the Selling Parties, will be valid and binding on the Selling Parties and enforceable in accordance with its terms, except as limited by bankruptcy and insolvency laws and by other laws affecting the rights of creditors generally;

(d)  Except as set forth in SCHEDULE 6.11 to this Agreement, such counsel does not know of any suit, action, arbitration or legal, administrative or other proceeding or governmental investigation pending or threatened against or

Instrument or other agreement, or law, statute, rule, regulation, judgment, order or decree to which Selling Parties are a party, or by which Selling Parties or the Assets may be bound, or (li) an event that would permit any party to any agreement or Instrument to terminate it or to accelerate the maturity of any indebtedness or other obligation of Selling Parties or (iii) an event that would result in the creation or imposition of any lien, charge or encumbrance on any of the Assets;

(f)     Every consent, approval, authorization or order of any court or governmental agency or  body that is required for the consummation by Purchaser of the transactions contemplated by this Agreement has been obtained and will be in effect on the Closing Date;

(g)     Selling Parties has good and marketable title to all its assets, including those described in the Schedules to this Agreement, free and clear of all liens, encumbrances, equities, conditional sales contracts, security interests, charges and restrictions, except as set forth in this Agreement or the Schedules hereto; and

10.6   Absence of Litigation.     No action, suit or proceeding before any court or any governmental body or authority, pertaining to the transaction contemplated by this Agreement or to its consummation, shall have been instituted or threatened on or before the Closing Date.

10.7   Corporate Approval. The execution of and delivery of this Agreement by Selling Parties, and the performance of its covenants and obligations under it, shall have been duly authorized by all necessary corporate action, and Purchaser shall have received copies of all resolution pertaining to that authorization, certified by the Selling Parties.

10 8   Title Policies. Purchaser shall have received from Selling Parties title insurance policies, dated as of the Closing Date, issued by a title Insurance and trust Company at Purchasers expense, insuring fee simple title in Purchaser to all the Owned Real

pertaining to the matters covered by it, shall have been obtained by Selling Parties and delivered to Purchaser.

10.10 <u>Approval of Documentation</u>. The form and substance of all certificates, instruments, opinions and other documents delivered to Purchaser under this Agreement shall be satisfactory in all reasonable respects to Purchaser and its counsel.

10.11 <u>Condition of Assets</u>. The properties shall not have been materially or adversely affected in any way as a result of any fire, accident, storm or other casualty or labor or civil disturbance or act of God or the public enemy.

## ARTICLE 11. CONDITIONS PRECEDENT TO SELLING PARTIES PERFORMANCE

The obligations of Selling Parties to sell and transfer the properties under this Agreement are subject to the satisfaction, at or before the Closing, of all the following conditions:

11.1 <u>Accuracy of Buyer's Representations and Warranties</u>. All representations and warranties by Purchaser contained in this Agreement or in any written statement delivered by Purchaser under this Agreement shall be true on and as of the Closing as though such representations and warranties were made on and as of that date.

11.2 <u>Buyer's Performance</u>. Purchaser shall have performed and complied with all covenants and agreements, and satisfied all conditions that it is required by this Agreement to perform, comply with, or satisfied, before or at the Closing.

11.3 <u>Opinion of Buyer's Counsel</u>. Purchaser shall have furnished Selling Parties with an opinion, dated the Closing Date, of legal counsel for Purchaser, in form and substance satisfactory to Selling Parties and its counsel, to the effect that:

(b)     All corporate proceedings required by law or by the provisions of this Agreement to be taken by Purchaser on or before the Closing Date in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement, have been duly and validly taken;

(c)     Purchaser has the corporate power and authority to acquire the Assets for the consideration set forth herein;

(d)     Every consent, approval, authorization or order of any court or governmental agency  or body that is required for the consummation by Purchaser of the transactions contemplated by this Agreement has been obtained and will be in effect on the Closing Date;

(e)     The consummation of the transaction contemplated by this Agreement does not violate or contravene any of the provisions of any charter, bylaw or resolution of Purchaser or of any indenture, agreement, law, statute, regulation, judgment, order or decree to which Purchaser is a party or by which Purchaser is bound.

(f)     This Agreement has been duly and validly authorized and, when executed and delivered by Purchaser, will be valid and binding on Purchaser and enforceable in accordance with its terms, except as limited by bankruptcy and insolvency laws and by other laws affecting the rights of creditors generally.  In rendering its opinion, counsel for Purchaser may rely on certificates of governmental authorities and on opinions of associate counsel.

11.4    Buyer's Corporate Approval.     Purchaser shall have received corporate authorization and approval for the execution and delivery of this Agreement and all corporate action necessary or proper to fulfill the obligations of Purchaser to be performed under this Agreement on or before the Closing Date.

ARTICLE 12.     SELLING PARTIES' OBLIGATIONS AFTER THE CLOSING.

12.1    Disclosure.    The Selling Parties will not disclose to any person or use for their

12.2 _Selling Parties' Indemnities_. The Selling Parties, jointly and severally, shall indemnify and hold harmless Purchaser against and in respect of any and all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorneys fees, that Purchaser shall incur or suffer, which arise, result from or relate to any breach of, or failure by the Selling Parties or any of them to perform, any of their representations, warranties, covenants or agreements in this Agreement or in any schedule, certificate, exhibit or other instrument furnished or to be furnished by the Selling Parties under this Agreement.

12.3 _Access to Records_. From and after the Closing, the Selling Parties shall allow Purchaser, and its counsel, accountants and other representatives, such access to records which after the Closing are in the custody or control of the Selling Parties as Purchaser reasonably requires in order to insure right title and interest in the properties.

## ARTICLE 13.    COSTS

13.1 _Finder's or Broker's Fees_. Each of the parties represents and warrants that it dealt with no broker or firm in connection with any of the transactions contemplated by this Agreement, and, insofar as it knows, no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions.

13.2 _Expenses_. Each of the parties shall pay all their own costs and expenses, including, but not limited to attorneys' fees, incurred or to be incurred by it in negotiating and preparing this Agreement and in closing and carrying out the transactions contemplated by this Agreement. The Selling Parties attorneys' fees shall be paid out of the amounts received pursuant to Article 2 and shall not be paid by Selling Parties prior to the Closing.

## ARTICLE 14.    FORM OF AGREEMENT

14.1 _Headings_. The subject headings of the Articles and Sections of this Agreement are included for purposes of convenience only, and shall not affect the

any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

14.3   Counterparts.      This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

# ARTICLE 15.       PARTIES

15.1   Parties in Interest.   Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provision give any third persons any right of subrogation or action over against any party to this Agreement.

15.2   Assignment. This Agreement shall be binding on and shall inure to the benefit of the parties to it and their respective heirs or legal representatives and their respective successors and assigns.

# ARTICLE 16. REMEDIES

16.1   Recovery of Litigation Costs      If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other cost incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

16.2   Conditions Permitting Termination.      Subject to the provisions of Article 3 relating to the postponement of the Closing Date, either party may on the Closing Date terminate this Agreement by written notice to the other, without liability to the other, if any bona fide action or proceeding shall be pending against either party on the Closing Date that could result in an unfavorable judgment, decree or order that would prevent or make unlawful the carrying out of this Agreement.

16.3   Defaults Permitting Termination. If either Purchaser or Selling Parties materially defaults in the due and timely performance of any of its warranties, covenants, or

agreements under this Agreement, the non-defaulting party or parties may on the Closing Date give notice of termination of this Agreement, in the manner provided in Article 20. The notice shall specify with particularity the default or defaults on which the notice is based. The termination shall be effective TEN days after the Closing Date, unless the specified default or defaults have been cured on or before this effective date for termination.

## ARTICLE 17  NATURE AND SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All representations, warranties, covenants and agreements of the parties contained in this Agreement, or in any instrument, certificate, opinion or other writing provided for in it, shall survive the Closing.

## ARTICLE 18.    NOTICES

All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the third day after mailing if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly signed as follows:

Sellers;  K.S. POWELL INVESTMENTS, INC.
C/o Kenneth S. Powell
3408 N Union Blvd.
St. Louis, MO 63115

KENNETH S. POWELL PROFIT SHARING TRUST
C/O Kenneth S Powell
3408 N. Union Blvd.
Saint Louis, MO  63115

KENNETH S. POWELL INVESTMENTS, INC.
C/O Kenneth S. Powell, Statutory Trustee
3408 N Union Blvd.
St. Louis, MO 63115

21

RR INVESTMENTS, INC
C/O Ronald Roberts
3408 N Union Blvd.
Saint Louis, MO 63115


Purchasers: STEFFEN PROPERTIES, INC. An Arizona corporation
C/O Andrew Batchman
Phoenix, Arizona.


Any party may change its address for purposes of this Article by giving the other parties written notice of the new address in the manner set forth above.


## ARTICLE 19.    GOVERNING LAW

This Agreement shall be construed in accordance with, and governed by, the laws of the State of Missouri.

## ARTICLE 20.    MISCELLANEOUS

20.1  Announcements.    None of the Selling Parties will make any announcements to the public or to employees of Selling Parties concerning this Agreement or the transactions contemplated hereby without the prior approval of Purchaser, which will not be unreasonably withheld.  Notwithstanding any failure of Purchaser to approve it, the Selling Parties may make an announcement of substantially the same information as heretofore announced to the public by Purchaser, or any announcement required by applicable law, but the Selling Parties shall in either case notice Purchaser of the contents thereof reasonably promptly in advance of its issuance.

20.2  References.  Unless otherwise specified, references to Sections or Articles are to Sections or Articles in this Agreement.

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Vincent DiBenedetto; Rocco Sapienza; Louis DeFrancesca; Patrick Conway and Cecil Davis

**JUDGE KOCORAS**

**MAGISTRATE JUDGE BOBRICK**

**DEFENDANTS**
Anthony Joseph Pope; Kenneth S. Powell; Rona L. Roberts; Kenneth S. Powell Investments, Inc.; Kenneth S. Powell Profit Sharing Trust; R.R. Investments, Inc., a Missouri corporation; Ismael Covarrubias, and York Road, LLC, a Missouri Limited Liability Company

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Cook
(IN U.S. PLAINTIFF CASES ONLY)
IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**00C 3294**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jack J. Carriglio
Stephen A. Gorman
Foran & Schultz
30 North LaSalle Street - Suite 3000
Chicago, Illinois 60602 (312/368-8330)

ATTORNEYS (IF KNOWN)

Unknown

**DOCKETED**
**MAY 31 2000**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only) AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 U.S.C. §78j(b) and Rule 10b-5 - Securities Fraud; 15 U.S.C. §77,(2) - Securities Fraud

## VII. REQUESTED IN COMPLAINT
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. This case
- ☒ is not a refiling of a previously dismissed action.
- ☐ is a refiling of case number _____ previously dismissed by Judge _____

DATE
May 31, 2000

SIGNATURE OF ATTORNEY OF RECORD

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

JUDGE KOCORAS

MAGISTRATE JUDGE BOBRICK

FILED 504
00 MAY 31 PM 2: 24
CLERK
U.S. DISTRICT COURT

In the Matter of

VINCENT DiBENEDETTO, et al., v. ANTHONY JOSEPH POPE, et al.

Case Number: 00C 3294

**APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:**

VINCENT DiBENEDETTO; ROCCO SAPIENZA; LOUIS DeFRANCESCA; PATRICK CONWAY and

GAIL DAVIS

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Stephen A. Gorman | NAME Jack J. Carriglio |
| FIRM Foran & Schultz | FIRM Foran & Schultz |
| STREET ADDRESS 30 North LaSalle Street – Suite 3000 | STREET ADDRESS 30 North LaSalle Street – Suite 3000 |
| CITY/STATE/ZIP Chicago, Illinois 60602 | CITY/STATE/ZIP Chicago, Illinois 60602 |
| TELEPHONE NUMBER 312/368-8330 | TELEPHONE NUMBER 312/368-8330 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 01020323 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 00400254 |
| MEMBER OF TRIAL BAR? YES ☒ NO ☐ | MEMBER OF TRIAL BAR? YES ☒ NO ☐ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

DOCKETED
MAY 31 2000

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE